UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WAYNE and LINDA MUCHA, Individually
and on Behalf of All Others Similarly
Situated,

                   Plaintiffs,

                   v.

VOLKSWAGEN
AKTIENGESELLSCHAFT, MATTHIAS
MÜLLER, MARTIN WINTERKORN,
FRANK WITTER, and HANS DIETER
PÖTSCH,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.:  17-CV-05092 (DLI) (PK)

The Honorable Dora L. Irizarry

ORAL ARGUMENT REQUESTED

## DEFENDANT VOLKSWAGEN AG'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Robert J. Giuffra, Jr.
Suhana S. Han
Justin J. DeCamp
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for Volkswagen AG, Matthias Müller,
Frank Witter, and Hans Dieter Pötsch*

September 11, 2018

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...................................................................................1

**ALLEGATIONS OF THE AMENDED COMPLAINT** ...........................................4

    A.    Plaintiffs' Misstatements and Omissions Allegations ............................5

    B.    Plaintiffs' Scienter Allegations .................................................................6

**ARGUMENT** ..............................................................................................................7

**I.**    **PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS AS A MATTER OF LAW** ............................7

    A.    The Challenged Statements Are Inactionable Puffery and Are Not Adequately Alleged to Be False ..........................................7

        1.    Statements About Volkswagen's Corporate Culture, Innovation, and Market Conditions Are Too Vague and General To Be Actionable ..................................7

        2.    Plaintiffs Do Not Adequately Allege That Any of the Challenged Statements Were Materially False ............................10

    B.    Plaintiffs' Omissions Theory Fails Because Plaintiffs Do Not Allege That Volkswagen Had a Duty to Disclose the Alleged Anticompetitive Conduct ........11

        1.    Plaintiffs Fail To Plead With Particularity That the Alleged Illegal Conduct Occurred ..........................................11

        2.    Volkswagen's Statements Were Not Rendered Misleading by Nondisclosure of the Alleged Anticompetitive Conduct ............14

**II.**    **PLAINTIFFS FAIL TO ADEQUATELY ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER** ................18

**III.**    **NEW YORK IS AN INAPPROPRIATE FORUM BECAUSE THE ALLEGED FACTS GIVING RISE TO PLAINTIFFS' CLAIM OCCURRED ELSEWHERE** ........21

    A.    Plaintiffs' Chosen Forum Is Not Entitled to Deference ..........................22

    B.    Germany Is an Adequate Alternative Forum for This Litigation ..........23

    C.    The Public and Private Interest Factors Strongly Favor Litigating in Germany ........23

**CONCLUSION** ..........................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*ATSI Commc'ns* v. *Shaar Fund*,
  493 F.3d 87 (2d Cir. 2007)....................................................................................4, 19

*In re Axis Capital Holdings, Ltd. Sec. Litig.*,
  456 F. Supp. 2d 576 (S.D.N.Y. 2006).........................................................3, 12, 16

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)...................................................................12

*Brody* v. *Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ...............................................................................16

*Campo* v. *Sears Holding*,
  635 F. Supp. 2d 323 (S.D.N.Y. 2009)...................................................................18

*Carey* v. *Bayerische Hypo-Und Vereinsbank AG*,
  370 F.3d 234 (2d Cir. 2004)..................................................................................23

*City of Monroe Emps. Ret. Sys.* v. *Bridgestone*,
  399 F.3d 651 (6th Cir. 2005) ................................................................................10

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
  752 F.3d 173 (2d Cir. 2014)........................................................................ *passim*

*Dura Pharms., Inc.* v. *Broudo*,
  544 U.S. 336 (2005)................................................................................................7

*ECA, Local 134 IBEW* v. *J.P. Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)....................................................................................7

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)....................................................................................14

*Fagan* v. *Deutsche Bundesbank*,
  438 F. Supp. 2d 376 (S.D.N.Y. 2006)......................................................................4

*In re FBR Inc. Sec. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008)...................................................................16

*Finocchiaro* v. *NQ Mobile, Inc.*,
  2018 WL 1217728 (S.D.N.Y. Feb. 27, 2018)..........................................................9

*Fries* v. *N. Oil & Gas, Inc.*,
   285 F. Supp. 3d 706 (S.D.N.Y. 2018)......................................................................14

*Gamm* v. *Sanderson Farms*,
   2018 WL 1319157 (S.D.N.Y. Jan. 19, 2018) .........................................................13

*In re GMR Sec. Litig.*,
   2013 WL 3781509 (S.D.N.Y. July 19, 2013) .........................................................11

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................14

*Hogan* v. *Pilgrim's Pride*,
   2018 WL 1316979 (D. Colo. Mar. 14, 2018) .........................................................14

*Ind. Pub. Ret. Sys. v. SAIC*,
   818 F.3d 85 (2d Cir. 2016).......................................................................................8

*In re Infineon Techs. AG*,
   2006 WL 1329887 (N.D. Cal. May 16, 2006) .........................................................17

*Iragorri* v. *United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001).......................................................................................22

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005)................................................................12, 13

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001).....................................................................................19

*Koster* v. *Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947).................................................................................................21

*Lentell* v. *Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).......................................................................................7

*Leonard* v. *Abbott Labs.*,
   2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ..............................................................9

*In re Lion's Gate Entmt. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) .........................................................................18

*Lynch* v. *Hilton Worldwide*,
   2011 WL 5240730 (D.N.J. Oct. 31, 2011)...............................................................22

*Matrixx Initiatives, Inc.* v. *Siracusano*,
   563 U.S. 27 (2011)...................................................................................................11

*Menaldi* v. *Och-Ziff Capital*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016)..............................................................3, 15

*Menkes* v. *Stolt-Nielsen*,
  2005 WL 3050970 (D. Conn. Nov. 10, 2005) .......................................................12

*Novak* v. *Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..................................................................................19

*Oliver Wyman* v. *Eielson*,
  282 F. Supp. 3d 684 (S.D.N.Y. 2017)...................................................................10

*Ong* v. *Chipotle Mexican Grill*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................2, 7

*Piper Aircraft Co.* v. *Reyno*,
  454 U.S. 235 (1981)..............................................................................21, 22, 23

*Pollux Holding Ltd.* v. *Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003)....................................................................................23

*Rosner* v. *Star Gas Partners, L.P.*,
  344 F. App'x 642 (2d Cir. 2009) ............................................................................2

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016)..............................................................15, 16

*Sinochem Int'l Co.* v. *Malay. Int'l Shipping*,
  549 U.S. 422 (2007)...............................................................................................22

*In re Sotheby's Holdings, Inc. Securities Litigation*,
  2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)...........................................15, 16, 17

*Stratte-McClure* v. *Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015)....................................................................................19

*Teamsters Local 445 Freight Pension Fund* v. *Dynex Capital*,
  531 F.3d 190 (2d Cir. 2008)...............................................................................3, 19

*In re Tyson Foods, Inc. Sec. Litig.*,
  2018 WL 1598670 (W.D. Ark. Mar. 31, 2018) .....................................................13

*U.S. Bank Nat'l Ass'n* v. *PHL Variable Ins.*,
  2013 WL 791462 (S.D.N.Y. Mar. 5, 2013) .............................................................9

*In re UBS AG Sec. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)......................................................7, 8

*Viking Glob. Equities, LP* v. *Porsche Automobil Holding SE*,
    958 N.Y.S.2d 35 (App. Div. 2012) ...................................................................23

*Wave Studio* v. *Gen. Hotel Mgmt.*,
    712 F. App'x 88 (2d Cir. 2018) .....................................................................21

*XYZ Two Way Radio Serv.* v. *Uber Techs.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) ..............................................................8

*In re Yukos Oil Co. Sec. Litig.*,
    2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) .............................................12, 13

## STATUTES AND RULES

15 U.S.C. § 78u-4(b) ............................................................................................7

Fed. R. Civ. P. 9(b) ................................................................................ *passim*

PSLRA ......................................................................................3, 7, 10, 14

## PRELIMINARY STATEMENT

Plaintiffs Wayne and Linda Mucha ("Plaintiffs") seek to transform an antitrust inquiry by two foreign authorities—with no finding of wrongdoing—into fraud under the U.S. securities laws.   In doing so, Plaintiffs rely almost exclusively on two unsubstantiated, sensationalized articles from the German magazine, *Der Spiegel*.[1]   The articles, published in July 2017 and January 2018, claimed that certain German automobile manufacturers, including Volkswagen AG ("Volkswagen"), had communications over the course of several years that limited competition over technical innovation and raw materials costs.   The articles reported that, based on this alleged anticompetitive conduct, the European Commission ("EC") and Germany's Federal Cartel Office ("FCO") are inquiring into activity by Volkswagen and other German automobile manufacturers.

On the heels of the July 2017 article, Plaintiffs filed suit in August 2017 against Volkswagen; Matthias Müller, then-Chairman of the Volkswagen Board of Management (the "Board"); Frank Witter, a member of Volkswagen's Board for Finance and Controlling since October 2015; Hans Dieter Pötsch, now-Chairman of Volkswagen's Supervisory Board; and Martin Winterkorn, the Chairman of the Board from 2007 to September 2015 (collectively, the "Individual Defendants").   On July 12, 2018, Plaintiffs subsequently filed an amended complaint (the "Amended Complaint") against Volkswagen and the Individual Defendants, recycling *Der Spiegel*'s claims of anticompetitive conduct and alleging that a series of generic statements from Volkswagen's Annual Reports from 2012 through 2016 (the "Annual Reports") were materially misleading because Volkswagen did not disclose this anticompetitive conduct.   The challenged statements fall into three main categories: (1) statements about Volkswagen's corporate culture

---

[1] Plaintiffs also rely on a July 22, 2017 *Forbes* article.  (Am. Compl. ("AC") ¶¶ 42-43.)

("Corporate Culture Statements") (*e.g.*, AC ¶ 67 ("Compliance with international rules and the fair treatment of our business partners and competitors are among the guiding principles followed by our Company")); (2) statements about Volkswagen's growth and innovative technology ("Innovation Statements") (*e.g.*, *id.* ¶ 76 ("The Volkswagen Group once again became a great deal more innovative, more international and more competitive last year")); and (3) statements describing the market in which Volkswagen participated ("Market Statements") (*e.g.*, *id.* ¶ 57 ("Commodity prices were highly volatile in 2012")) (collectively, the "Challenged Statements").[2]  The Amended Complaint should be dismissed for the following four reasons:

*First*, all of the Challenged Statements are inactionable as a matter of law because they constitute puffery or because Plaintiffs do not adequately allege that they were false. Indeed, the Corporate Culture Statements, which are "general statements about reputation, integrity, and compliance with ethical norms" couched in aspirational language, are "quintessential examples" of corporate puffery.  *See City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *Ong* v. *Chipotle Mexican Grill*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018).   In addition, the Innovation Statements—such as Volkswagen becoming "more innovative" and "more international" (AC ¶ 76)—are similar to statements that courts already have deemed to be puffery because they are so "vague and generalized that no reasonable investor would have relied upon them."  *Rosner* v. *Star Gas Partners, L.P.*, 344 F. App'x 642, 644 (2d Cir. 2009).  Plaintiffs' alleged Market Statements are similarly inactionable because Plaintiffs plead no facts showing that those statements were false when made.  For example, Plaintiffs allege that statements that "raw materials . . . were subject to pronounced [price] volatility" and "[c]ommodity prices were highly volatile in 2012" were

---

[2] The Challenged Statements are catalogued for the Court in the attached Appendix A.

"materially false" (AC ¶¶ 55-58), but plead no facts showing such falsity.  To the contrary, Plaintiffs acknowledge the truth of these statements:  "Instead of each automaker and steel supplier simply negotiating their own prices for [the] raw *materials whose prices were subject to 'strong fluctuations'* . . . ."  (*id.* ¶ 56 (emphasis added)).

*Second*, Plaintiffs do not allege any actionable omissions.  Although Plaintiffs claim that Volkswagen had a duty to disclose uncharged anticompetitive conduct, "companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'"  *City of Pontiac*, 752 F.3d at 184 (citation omitted).  While disclosure of uncharged wrongful conduct may be necessary to avoid rendering existing statements misleading in certain limited circumstances, Plaintiffs do not support their allegations of anticompetitive conduct with particularized facts as required by Federal Rule of Civil Procedure 9(b), and thus, "the securities law claims premised on the nondisclosure of the alleged scheme are fatally flawed."  *In re Axis Capital Holdings, Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006).  Plaintiffs also fail to allege that Volkswagen "made specific statements that could be interpreted as suggesting that the undisclosed improper conduct alleged by plaintiffs was not occurring," thereby rendering the undisclosed conduct too attenuated from the Challenged Statements and not misleading as a matter of law.  *Menaldi* v. *Och-Ziff Capital*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016).

*Third*, Plaintiffs fail to adequately allege facts supporting a strong inference of scienter under the Private Securities Litigation Reform Act ("PSLRA")—a fundamental element of a securities fraud claim.  A corporate defendant can only have acted with scienter if the corporate official who made the alleged false statement acted with scienter, but Plaintiffs fail to plead a "strong inference" of scienter as to any of the corporate officials identified in the Amended Complaint.  *Teamsters Local 445 Freight Pension Fund* v. *Dynex Capital*, 531 F.3d

190, 195 (2d Cir. 2008).  As explained in the motion to dismiss filed by Messrs. Müller, Witter, and Pötsch, Plaintiffs fail to plead a "strong inference" of scienter as to any of those corporate officials by not alleging with particularity facts (i) showing "motive and opportunity to commit the fraud," or (ii) constituting "strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI Commc'ns* v. *Shaar Fund*, 493 F.3d 87, 99 (2d Cir. 2007).  Plaintiffs also fail to plead a "strong inference" of scienter on the part of Mr. Winterkorn, the only other corporate official identified in the Amended Complaint.  Specifically, Plaintiffs' allegations are insufficient to show that Mr. Winterkorn knew of the alleged anticompetitive conspiracy, or that knowledge of the alleged conspiracy necessarily equates to knowledge or reckless disregard of the falsity of the Challenged Statements.

*Finally*, because none of Defendants (or, apparently, Plaintiffs) reside in New York, the purportedly anticompetitive conduct underlying Plaintiffs' claims allegedly took place in Germany, and documentary evidence and potential witnesses are located abroad, the Court should dismiss the Amended Complaint on *forum non conveniens* grounds.  Where, as here, "the courts of Germany furnish an adequate alternative forum for the litigation of [Plaintiffs'] claims," and the public and private interests soundly point to Germany as the more appropriate forum for this dispute, dismissal is warranted.  *Fagan* v. *Deutsche Bundesbank*, 438 F. Supp. 2d 376, 382 (S.D.N.Y. 2006).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Relying almost entirely on two articles published on July 27, 2017 and January 30, 2018 in the German magazine *Der Spiegel*, Plaintiffs allege that Volkswagen submitted to the EC and the FCO a "voluntary declaration" of its "participation in suspected cartel infringements" in July 2016.  (AC ¶ 2.)  Plaintiffs allege that these foreign authorities are inquiring into activity by a group of five German automotive companies (the "Group of Five"),

including Volkswagen, for collusive activities.  (*Id.* ¶ 53.)  (i) participation in working groups relating to automobile engines, chassis, clutches, air suspensions, brakes, and seats, and (ii) exchanging sensitive, proprietary data on technology and suppliers.  (*Id.* ¶ 2.)

Plaintiffs allege that they purchased American Depositary Receipts ("ADRs") on an over-the-counter ("OTC") market in the United States between August 30, 2012 and July 21, 2017.  (*Id.* ¶¶ 1, 13-14.)  Notwithstanding that Plaintiffs' ADRs are merely a receipt establishing beneficial ownership of Volkswagen ordinary and preference shares that are on deposit in Germany—listed only on foreign securities exchanges, and not traded on any U.S. exchange, and that Plaintiffs' allegations of fraud are overwhelmingly foreign in character, Plaintiffs allege that the Eastern District of New York is the appropriate venue for their action.  (*Id.* ¶ 11.)

## A.    Plaintiffs' Misstatements and Omissions Allegations

In their Amended Complaint, Plaintiffs identify three categories of generic statements in Volkswagen's Annual Reports that they allege were materially false and misleading:    (1) Corporate Culture Statements; (2) Innovation Statements; and (3) Market Statements.  The Corporate Culture Statements include statements about Volkswagen's integrity and commitment to compliance, including that "[c]ompliance with international rules and the fair treatment of our business partners and competitors are among the guiding principles followed by Volkswagen" and that Volkswagen prepared its consolidated financial statements in compliance with the International Financial Reporting Standards ("IFRS"), as adopted by the European Union (EU).  (AC ¶¶ 67, 69; *see* App. A.)  The Innovation Statements include statements about Volkswagen's technological innovation and growth position, including that Volkswagen was "pursuing the goal of offering all customers the mobility and innovation they need" and offered an extensive range of vehicles "that is unparalleled in the industry."  (AC ¶¶ 59, 63; *see* App. A.) The Market Statements include statements about externally verifiable market prices and price

volatility of raw materials and commodities, as well as statements about "the difficult market environment and increasingly fierce competition." (*See, e.g.*, AC ¶¶ 55, 57, 61; *see also* App. A.) Plaintiffs assert that such statements were materially false and misleading because Volkswagen knew or recklessly disregarded that it "was engaged in anticompetitive conduct in concert with the other members of the Group of Five." (AC ¶ 56.)

### B.   Plaintiffs' Scienter Allegations

To try to allege scienter, Plaintiffs claim that the Individual Defendants "knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading." (*Id.* ¶ 165.) Plaintiffs further assert that Volkswagen acted "in the face of warnings from in-house and outside attorneys," and that Mr. Winterkorn was a "notorious micromanager." (*Id.* ¶¶ 50-51.) But Plaintiffs make no specific allegations about what information the Individual Defendants knew or should have known, or how or when they knew or should have known that information. Indeed, outside the Individual Defendants' positions on Volkswagen's Board, Plaintiffs make no attempt to distinguish when and where any of the Individual Defendants had access to information pertaining to the alleged anticompetitive conduct or the Challenged Statements.[3]

### LEGAL STANDARD

To state a claim under § 10(b), "[P]laintiffs must allege that [Defendants] '(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance

---

[3] Although Plaintiffs seek to allege actionable misstatements in Volkswagen's Annual Reports from 2012 through 2016, Mr. Müller was Chairman of the Board only from September 2015 to April 2018, Mr. Witter has been a member of the Board for Finance and Controlling only since October 2015, and Mr. Pötsch was a member of the Board's Finance and Controlling only until October 2015, when he became Chairman of the Supervisory Board. (AC ¶¶ 16, 18-19, 94, 113.)

was the proximate cause of their injury.'" *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation omitted).  A court must dismiss a complaint that fails to plead "enough facts to state a claim to relief that is plausible on its face." *ECA, Local 134 IBEW* v. *J.P. Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citation omitted).  Moreover, under Rule 9(b) and the PSLRA, securities fraud complaints must "'specify' each misleading statement," "set forth the facts 'on which [a] belief' that a statement is misleading was 'formed,'" and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. § 78u-4(b)(1), (2)); Fed. R. Civ. P. 9(b).

## ARGUMENT

## I.      PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS AS A MATTER OF LAW.

In their Amended Complaint, Plaintiffs identify a litany of purportedly false or misleading statements, but all qualify as inactionable puffery or are not adequately alleged to be false or misleading.  Plaintiffs' fraud-by-omission theory also fails because Plaintiffs fail to plead facts with particularity showing that Volkswagen engaged in any wrongful conduct giving rise to a duty to disclose.

### A.      The Challenged Statements Are Inactionable Puffery and Are Not Adequately Alleged to Be False.

#### 1.      Statements About Volkswagen's Corporate Culture, Innovation, and Market Conditions Are Too Vague and General To Be Actionable.

Statements that are "too general to cause a reasonable investor to rely upon them" are inactionable as a matter of law.  *City of Pontiac*, 752 F.3d at 183.  "The quintessential examples of such inactionable puffery are general statements about reputation, integrity, and compliance with ethical norms." *Ong*, 294 F. Supp. 3d at 232 (citations omitted); *see In re UBS*

*AG Sec. Litig.*, 2012 WL 4471265, at *35-36 (S.D.N.Y. Sept. 28, 2012) (holding "representations regarding UBS's commitment to compliance with legal and ethical standards" to be "at most, . . . puffery").  For instance, courts have held that statements about a company exceeding legal requirements and similar hyperbole are puffery.  *See, e.g.*, *UBS AG*, 2012 WL 4471265, at *34 (statements that defendant went "above and beyond what laws and regulations require" and "adhere[d] to high ethical standards" are puffery); *XYZ Two Way Radio Serv.* v. *Uber Techs.*, 214 F. Supp. 3d 179, 183-84 (E.D.N.Y. 2016) (dismissing as puffery "boastful and self-congratulatory" statements such as "we aim to go above and beyond local requirements").

All of the Challenged Statements are inactionable puffery.  For example, Plaintiffs allege that the following Corporate Culture Statement, which appeared in each of the Annual Reports in nearly the same wording, is false:

> Compliance with international rules and the fair treatment of our business partners and competitors are among the guiding principles followed by our Company. Volkswagen's sense of commitment has always gone beyond statutory and internal requirements; obligations undertaken and ethical principles accepted voluntarily also form an integral part of our corporate culture.

(AC ¶ 67; *see id.* ¶¶ 80, 99, 116, 131.)  This general statement about Volkswagen's corporate culture is a "quintessential example[]" of inactionable puffery, *Ong*, 294 F. Supp. 3d at 232, and indistinguishable from the types of statements courts routinely find to be inactionable corporate puffing.  *See, e.g.*, *UBS AG*, 2012 WL 4471265, at *34-36; *XYZ Two Way Radio*, 214 F. Supp. 3d at 184.  Volkswagen's description of compliance with international rules and ethical standards as being "among" the company's "guiding principles" also falls squarely under the umbrella of "explicitly aspirational" statements about "reputation, integrity, and compliance with ethical norms" that the Second Circuit has deemed "inactionable 'puffery.'"  *City of Pontiac*, 752 F.3d at 183; *see Ind. Pub. Ret. Sys. v. SAIC*, 818 F.3d 85, 97 (2d Cir. 2016) (upholding dismissal of statements in annual report regarding defendant's "culture of high ethical standards, integrity,

operational excellence, and customer satisfaction" and its "reputation for upholding the highest standards of personal integrity and business conduct").[4]

In addition, general statements about compliance with laws are statements of legal opinion (*i.e.*, not statements *of fact*) and therefore cannot be actionable. *See U.S. Bank Nat'l Ass'n* v. *PHL Variable Ins.*, 2013 WL 791462, at *8 (S.D.N.Y. Mar. 5, 2013) ("An insurer's legal opinion of the terms of its policies is not actionable [under a state consumer fraud statute]" where "[t]he veracity of th[e] statement depends on the legal effect of a contract's provisions" and is therefore "an opinion of law, not a misstatement of fact"). Regardless, statements of compliance that fail to identify specific laws, such as the Corporate Culture Statements here, are mere puffery because such statements are "too general to cause a reasonable investor to rely upon them." *See City of Pontiac*, 752 F.3d at 183; *see also Leonard* v. *Abbott Labs.*, 2012 WL 764199, at *22 (E.D.N.Y. Mar. 5, 2012) ("General statements about compliance with safety and quality standards are non-actionable 'puffery' where . . . they fail to identify specific requirements or standards.").

The Innovation and Market Statements are similarly inactionable puffery. Courts routinely reject § 10(b) claims based on expressions of "loose optimism" about a company's innovations, business prospects, and general market conditions. *Finocchiaro* v. *NQ Mobile, Inc.*, 2018 WL 1217728, at *5 (S.D.N.Y. Feb. 27, 2018) ("The corporate puffery rule applies to loose

---

[4] The Second Circuit has noted that "a company's *specific* statements that emphasize its reputation for integrity or ethical conduct as central to its financial condition or that are clearly designed to distinguish the company from other specified companies in the same industry" may "in some circumstances violate the securities laws." *SAIC*, 818 F.3d at 98 (emphasis added). But Volkswagen's Corporate Culture Statements do not present these atypical circumstances. The Corporate Culture Statements are not "specific," do not state that the company's values are "central to its financial condition," and do not attempt to distinguish Volkswagen from "specified companies in the same industry."

optimism about both a company's current state of affairs and its future prospects."). "[C]ourts have demonstrated a willingness" to find such statements "immaterial as a matter of law" because "no reasonable investor would find them important to the total mix of information available." *See id.* The Innovation and Market Statements are similar to statements that courts have already deemed non-actionable. For example, Plaintiffs allege that the following Innovation Statement is false and misleading: "The Volkswagen Group once again became a great deal more innovative, more international and more competitive last year." (AC ¶ 76.) But this statement is "non-actionable puffery" because it contains "vague and imprecise colloquialisms that convey little more than opinion and largely defy measurement or proof." *Oliver Wyman* v. *Eielson*, 282 F. Supp. 3d 684, 702-03 (S.D.N.Y. 2017). Plaintiffs' reliance on the Corporate Culture, Innovation, and Market Statements is thus misplaced, as such statements are "too squishy [and] too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision." *City of Monroe Emps. Ret. Sys.* v. *Bridgestone*, 399 F.3d 651, 671 (6th Cir. 2005).

### 2. Plaintiffs Do Not Adequately Allege That Any of the Challenged Statements Were Materially False.

As required by the heightened pleading standards of Rule 9(b) and PSLRA. Plaintiffs also plead no facts showing that any of the Challenged Statements were false when made. Instead, Plaintiffs formulaically recite that the Challenged Statements were "materially false and misleading." (*See, e.g.*, AC ¶¶ 56, 58, 60, 62.) For example, Plaintiffs conclusorily allege that the Innovation Statements, including consumer demand for the company's products, are false but do not allege how these statements are false. Plaintiffs cite a statement in the 2012 Annual Report that Volkswagen increased its "market share in key core markets" (*id.* ¶ 65), and cite similar statements in the 2013 and 2014 Annual Reports (*id.* ¶¶ 82, 101). But Plaintiffs

never allege how these statements regarding consumer demand were false.  Similarly, Plaintiffs conclusorily allege that several Market Statements regarding the volatility of prices for raw materials and commodities in the 2012 Annual Report are false but plead *zero* facts to show these statements' alleged falsity.  (*Id.* ¶¶ 55-58.)   To the contrary, Plaintiffs expressly acknowledge the truth of these statements throughout the Amended Complaint, alleging that the "prices for raw materials" were "subject to 'strong fluctuations.'"  (*See, e.g.*, *id.* ¶¶ 40, 56, 58, 62, 87, 98.)  Because "conclusory statements in a complaint and 'formulaic recitation of the elements of a cause of action' are insufficient" and Plaintiffs do not plead with particularity facts showing that the Challenged Statements were false, this Court should grant Volkswagen's motion to dismiss.  *In re GMR Sec. Litig.*, 2013 WL 3781509, at *1 (S.D.N.Y. July 19, 2013) (citation omitted).

**B.      Plaintiffs' Omissions Theory Fails Because Plaintiffs Do Not Allege That Volkswagen Had a Duty to Disclose the Alleged Anticompetitive Conduct.**

Plaintiffs resort to an omissions theory by alleging that certain statements— including "information about raw material pricing" and Volkswagen's competitive position—in the Annual Reports were rendered misleading because Volkswagen failed to disclose the alleged anticompetitive conduct.  (*See, e.g.*, AC ¶¶ 56, 58, 60, 76-79, 163; *see also* App. A.)   But Plaintiffs' omissions theory flounders because Plaintiffs fail to allege wrongful conduct with particularity and do not allege how any of the Challenged Statements were misleading.

**1.      Plaintiffs Fail To Plead With Particularity That the Alleged Illegal Conduct Occurred.**

Omissions are actionable under § 10(b) only when a corporation has a duty to disclose.  *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 44 (2011).  The securities laws "do not create an affirmative duty to disclose any and all material information."  *See id.*  Indeed, courts in the Second Circuit have repeatedly held that corporations do not have a general duty to

disclose uncharged illegal or criminal conduct, even if such information is material. *City of Pontiac*, 752 F.3d at 184 (affirming dismissal of shareholder action and noting "'companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing'"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 661 (S.D.N.Y. 2017) ("As the Court has already explained several times in this opinion, the securities laws do not impose on corporations a general, free-standing duty to disclose uncharged illegal conduct.").

Plaintiffs attempt to circumvent this settled law by claiming that Volkswagen's public statements gave rise to a duty to disclose wrongful conduct to avoid misleading investors with half-truths. (*E.g.*, AC ¶¶ 56, 58, 62 ("Defendants were duty bound to disclose all material facts . . . .").) While a duty to disclose uncharged illegal conduct may arise where "disclosure is necessary to prevent another statement from misleading the public," *Menkes* v. *Stolt-Nielsen*, 2005 WL 3050970, at *6 (D. Conn. Nov. 10, 2005), a complaint must still plead with particularity facts that would establish that the company actually engaged in illegal conduct. *See, e.g.*, *Axis*, 456 F. Supp. 2d at 585 (dismissing as "fatally flawed" § 10(b) claims predicated on alleged anticompetitive conduct because the "complaint fail[ed] to allege facts which would establish . . . an illegal scheme"); *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *14 (S.D.N.Y. Oct. 25, 2006) ("[T]he Complaint fails to plead with particularity sufficient facts demonstrating that [Defendant's] tax strategy violated [Russian tax codes]."); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 632 (S.D.N.Y. 2005) (dismissing omissions theory where plaintiffs "failed to allege with particularity that [Defendant] . . . violated [criminal] statutes").

Here, Plaintiffs' conclusory allegations and failure to plead specific facts demonstrating that Volkswagen engaged in illegal anticompetitive conduct are fatal to their nondisclosure theory. At the outset, Plaintiffs do not even identify a single antitrust law in their

62-page Amended Complaint.  (*See* AC ¶¶ 52-53 (alleging only that "members of the Group of Five are under investigation by regulators from both the [EC] and [FCO] in Germany").)  Having failed to identify any laws, rules, or regulations governing anticompetitive conduct, Plaintiffs have not alleged precisely *how* Volkswagen's alleged conduct is wrongful.  *See In re Tyson Foods, Inc. Sec. Litig.*, 2018 WL 1598670, at *9 (W.D. Ark. Mar. 31, 2018) (dismissing § 10(b) claim predicated on antitrust conspiracy where plaintiffs did not "adequately plead[] the 'how' of the underlying antitrust conspiracy" by "fail[ing] to support their allegations with particularized facts").    Additionally, even complaints identifying specific laws and containing far more particularity than Plaintiffs' Amended Complaint have been dismissed under Rule 9(b).  *See, e.g.*, *Yukos Oil*, 2006 WL 3026024, at *14 (dismissing § 10(b) action where plaintiff alleged violation of Article 40 of Russian Federation Tax Code); *JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d at 632 (dismissing § 10(b) action where plaintiffs identified specific criminal statutes).

Plaintiffs also fail to allege particularized facts showing the existence of an antitrust conspiracy.  Plaintiffs' claims are premised on the theory that Volkswagen participated in a scheme with other German automobile manufacturers to coordinate on technical development and raw material costs.  (AC ¶¶ 2, 6, 38-45.)  But Plaintiffs expressly admit that they "do not yet have access to the evidence" of this purported conspiracy.  (*Id.* ¶ 53.)  Without such evidence, Plaintiffs base their factual pleading almost entirely on two sensationalized articles from a German magazine.  (*See id.* ¶¶ 31-51.).  But in cribbing from these press reports, Plaintiffs fail to plead the "who, what, when, where and how" of the scheme.  *Gamm* v. *Sanderson Farms*, 2018 WL 1319157, at *3, *6 (S.D.N.Y. Jan. 19, 2018) (dismissing § 10(b)

claim for failure to "plead the facts of . . . alleged [price-fixing] conspiracy with particularity").[5]

In short, because Plaintiffs do not "plead the underlying antitrust conspiracy with sufficient particularity under the PSLRA's requirements, [their] claims for § 10 violations fail." *Hogan* v. *Pilgrim's Pride*, 2018 WL 1316979, at *9 (D. Colo. Mar. 14, 2018).[6]

### 2. Volkswagen's Statements Were Not Rendered Misleading by Nondisclosure of the Alleged Anticompetitive Conduct.

Even if Plaintiffs could plead with sufficient particularity the alleged underlying antitrust conspiracy, they bear the burden of demonstrating that Volkswagen's nondisclosure of the alleged conspiracy rendered the Challenged Statements misleading. *Fries* v. *N. Oil & Gas,*

---

[5] To try to circumvent their Rule 9(b) pleading obligation, Plaintiffs allege that "Volkswagen submitted to the [EC] and the German [FCO] 'what amounts to a voluntary declaration of its 'participation in suspected cartel infringements.'" (AC ¶ 2; *see id.* ¶ 52.)  Contrary to Plaintiffs' importuning, Volkswagen's submissions to these foreign authorities do not "amount[] to a voluntary declaration" of participation in an illegal cartel.  The EC rules provide for self-reporting without any admission of wrongdoing, so long as the information provided facilitates an inquiry.  *See* EC, Comm'n Notice on Immunity from Fines and Reduction of Fines in Cartel Cases (OJ 2006/C 298/11) Part II, Section A, ¶¶ 8-13; EC, Antitrust Manual of Procedures 105 (2012) ("the opening of proceedings does not prejudge in any way the existence of an infringement").  Thus, allegations that European leniency applications were filed do not imply admissions of unlawful conduct.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (affirming dismissal and rejecting plaintiffs' allegations regarding relevancy of overseas investigations into alleged antitrust violations); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (discussing irrelevancy of U.S. Department of Justice investigation, which reveals "nothing at all" about whether the conspiracy actually occurred and may "be broader or narrower [in scope] than the allegations at issue").

[6] Plaintiffs also do not meet *Twombly*'s plausibility standard in alleging an underlying antitrust conspiracy.  Plaintiffs allege that the conspiracy began from Japanese rivals beginning "to compete successfully against the Germans" and that these Japanese manufacturers were "leading the tech race" in the 1990s. (AC ¶ 29.) Plaintiffs also allege that the success of Volkswagen and "its largest German peers" depended on their vehicles' "reputation for high performance, cutting-edge technological innovation, and reliability."  (*Id.* ¶¶ 27-28.)  But a cartel that reduces innovation would, according to Plaintiffs' own allegations, only serve to increase the Japanese rivals' technological competition and lessen the alleged technical superiority of German cars that Plaintiffs allege Volkswagen and the Group of Five used to distinguish their products.  In light of this glaring inconsistency, the allegations are not enough to "nudge[] [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

-14-

*Inc.*, 285 F. Supp. 3d 706, 718 (S.D.N.Y. 2018) ("Allegations that defendants concealed corporate mismanagement or uncharged criminal conduct are not actionable unless the non-disclosures render other statements by defendants misleading.").  "The critical consideration for those courts in determining whether a corporation must disclose mismanagement or uncharged criminal conduct is whether 'the alleged omissions . . . are sufficiently connected to defendants' existing disclosures to make those public statements misleading.'"  *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016).  Courts have found a sufficient connection in three circumstances: (1) where a corporation puts the reasons for its success at issue, but "fails to disclose that a material source of its success is the use of improper or illegal business practices"; (2) where a corporation "makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring"; and (3) where a corporation "states an opinion that, absent disclosure, misleads investors about material facts underlying that belief."  *Menaldi*, 164 F. Supp. 3d at 581-82.  None of these circumstances are present here.

The court's decision in *In re Sotheby's Holdings, Inc. Securities Litigation* is instructive.  2000 WL 1234601, at *3-4 (S.D.N.Y. Aug. 31, 2000).  There, the defendant, Sotheby's, had stated that it faced "intense competition" with its "primary auction competitor," Christie's, which together with Sotheby's controlled 95% of the worldwide auction market.  *Id.* at *3-4.  Sotheby's represented that competition with Christie's was "intense" because of factors including the "amount of commission" the auction houses were charging to customers.  *Id.* Concluding that those statements were materially misleading, the court pointed to plaintiffs' particularized allegations showing that Sotheby's had illegally agreed with Christie's to fix the amount of commissions charged to customers, and thereby "eliminated price competition between the two houses."  *Id.* at *4 & n.2.  In essence, the nondisclosure of the price-fixing

activity in the context of the auction market at issue "create[d] an impression of a state of affairs which differ[ed] in a material way from the one that actually exist[ed]" when the statements were made. *Brody* v. *Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

As the "critical consideration" for determining whether a corporation must disclose wrongful conduct, Plaintiffs must demonstrate that the alleged omissions are sufficiently connected to the Challenged Statements. *See Sanofi*, 155 F. Supp. 3d at 403. Plaintiffs fail to do so here. Rather, Plaintiffs generally allege that: (i) the Market Statements are misleading because Volkswagen did not disclose that "it had 'agreed to a common strategy on steel purchasing, the so-called guidelines for material price compensation'" (*e.g.*, AC ¶ 56), (ii) that the Innovation Statements were misleading because Volkswagen did not disclose "its anticompetitive agreement with the other Group of Five members not to introduce a larger AdBlue tank" (*e.g.*, *id.* ¶ 64), and (iii) that the Corporate Culture Statement about IFRS reporting is misleading because Volkswagen did not disclose its participation in the Group of Five (*e.g.*, *id.* ¶ 73). Although the requisite connection between improper conduct and affirmative statements has been found where defendants "made specific statements that could be interpreted as suggesting that the undisclosed improper conduct alleged by plaintiffs was not occurring," *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 358 (S.D.N.Y. 2008), the Challenged Statements could not be interpreted by a reasonable investor as suggesting that Volkswagen or its executives had not engaged in anticompetitive conduct.

*First*, the Market Statements referencing raw materials and commodity prices are simply too attenuated from Volkswagen's alleged anticompetitive conduct. *See Axis*, 456 F. Supp. 2d at 590 n.4 (not "[e]very antitrust violation will render misleading generalized statements regarding . . . [the] state of the marketplace."). The court's decision in *Sotheby's*

confirms that the Market Statements are insufficiently connected to Volkswagen's alleged anticompetitive conduct.  In *Sotheby's*, plaintiffs alleged that Sotheby's misled investors by speaking about "competition" in the auction market while simultaneously engaging in antitrust misconduct.  2000 WL 1234601, at *3-4.  By contrast, here, two of the three Market Statements do not even reference competition or other automobile manufacturers.  Instead, these statements discuss raw materials in the marketplace and commodity prices in general terms.  (*See* AC ¶ 55 ("Most input and raw materials saw declining prices on the spot markets in 2012 because of the ongoing crisis in the eurozone.  However, despite this trend, prices remained at a high level and were subject to pronounced volatility."); *id.* ¶ 57 ("Commodity prices were highly volatile in 2012. . . . Assuming that the global economy continues to grow, we expect prices of most exchange-traded raw materials to remain high, but to fluctuate considerably, in 2013 and 2014. Prices for raw materials may also fall if growth rates decline.").)[7]

   *Second*, the Innovation Statements—such as "[w]e are pursuing the goal of offering all customers the mobility and innovation they need, sustainably strengthening our competitive position in the process" and "[w]e offer an extensive range of environmentally friendly, cutting-edge, high quality vehicles for all markets and customer groups that is unparalleled in the industry" (*id.* ¶¶ 59, 63)—are not sufficiently related to the size of the AdBlue tank to be misleading.  None of the Innovation Statements mentions AdBlue,

---

[7] Nor are the Market Statements referencing "fierce competition" (*e.g.*, AC ¶ 97) misleading.  To the contrary, the Amended Complaint alleges that there *was* fierce competition within the automobile market.  (*See, e.g.*, *id.* ¶¶ 41 ("Just as in the 1990s, the Group of Five in the early 2000s faced a competitive threat from Japanese automakers"); ¶ 68 (alleging that Group of Five rejected inquiries from competitors "Jaguar, Volvo, Renault and Fiat"); *cf. In re Infineon Techs. AG*, 2006 WL 1329887, at *6 (N.D. Cal. May 16, 2006) (statements about "intense" and "significant" competition found to be misleading where the *entire* market for product was subject to price-fixing scheme).

Volkswagen's diesel vehicles, or emissions technology.   Nor does the Amended Complaint allege any facts to show how a larger AdBlue tank relates to Volkswagen's vehicles' innovation or competitiveness.   Instead, Plaintiffs conclusorily allege that a larger AdBlue tank "would have been superior" based solely on allegations in a July 2017 *Forbes* article, and therefore should have been disclosed.   (*See, e.g.*, AC ¶¶ 41-44, 66).   This conjectural pleading is too attenuated to give rise to a duty to disclose.   *Campo* v. *Sears Holding*, 635 F. Supp. 2d 323, 336 (S.D.N.Y. 2009) (dismissing complaint with "[g]eneric and conclusory allegations based upon rumor or conjecture" as "undisputedly insufficient to satisfy" heightened pleading standard of § 10(b)).

*Finally*, Plaintiffs' allegation that the Corporate Culture Statement about IFRS reporting is misleading by virtue of Volkswagen's failure to disclose the alleged misconduct is insufficient.   Plaintiffs overlook that these statements constitute inactionable puffery.   *See supra* Section I.A.   Moreover, the link between Volkswagen's alleged anticompetitive conduct and international accounting standards is far too attenuated to support a § 10(b) claim.   *Cf. In re Lion's Gate Entmt. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 21-22 (S.D.N.Y. 2016) (no duty to disclose government investigation where plaintiffs alleged violations of GAAP and accounting standards).

## II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER.

The Amended Complaint also fails to state a claim because Plaintiffs do not adequately plead that the Individual Defendants acted with scienter.[8]   To avoid dismissal, Plaintiffs must plead facts that "create a strong inference that someone whose intent could be

---

[8] With respect to Plaintiffs' allegations regarding the Individual Defendants' scienter, Volkswagen adopts the argument set forth in Section II.B of the motion to dismiss filed by Messrs. Müller, Witter, and Pötsch.

imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital*, 531 F.3d 190, 195 (2d Cir. 2008).   Typically, the "most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant."  *Id.*   In this case, however, Plaintiffs fail to plead facts raising a "strong inference" of scienter against the Individual Defendants, who are the only Defendants alleged to have acted culpably in "making" the alleged misstatements at issue.  (AC ¶¶ 165-66.)

Scienter requires a showing of "actual intent" or "conscious recklessness," which is defined as "a state of mind approximating actual intent, and not merely a heightened form of negligence."  *Stratte-McClure* v. *Morgan Stanley,* 776 F.3d 94, 106 (2d Cir. 2015); *Dynex*, 531 F.3d at 194-95.   Plaintiffs can plead a "strong inference" of scienter only by alleging with particularity facts (i) showing that a defendant had "both motive and opportunity to commit the fraud," or (ii) constituting "strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI*, 493 F.3d at 99.   "Conscious misbehavior" "encompasses deliberate illegal behavior," and "recklessness" "represents an extreme departure from the standards of ordinary care."  *Novak* v. *Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

Here, Plaintiffs fail to plead any facts showing that Mr. Winterkorn had "both motive and opportunity" to commit fraud.   Without specific allegations of motive and opportunity, "the strength of the circumstantial allegations [that a defendant consciously or recklessly misbehaved] must be correspondingly greater."  *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  But Plaintiffs fail to allege "strong circumstantial evidence" that Mr. Winterkorn knew or recklessly disregarded that statements in the Annual Reports were materially false and misleading.   For example, Plaintiffs allege that Mr. Winterkorn was a "'notorious micromanager'" and that he acted in accordance with Volkswagen's Board's instruction not to

disclose so-called defeat devices to U.S. regulators during the "diesel emissions scandal." (AC ¶ 51.) But even if such general allegations were sufficient to show that Mr. Winterkorn knew about the defeat devices (which they are not), they are insufficient to support a strong inference that Mr. Winterkorn knew that the Challenged Statements—which had nothing to do with defeat devices—were materially false and misleading. Plaintiffs make no particularized allegations that Mr. Winterkorn was involved in the drafting or reviewing any of the challenged statements in the Annual Reports—indeed, Mr. Winterkorn was not even a member of Volkswagen's Board when the 2015 and 2016 Annual Reports were published.[9] Plaintiffs thus fail to allege facts showing both that Mr. Winterkorn was responsible for the challenged statements *and* that he knew or recklessly disregarded that the challenged statements were materially false and misleading.

Moreover, Plaintiffs make no specific allegations supporting the inference that Mr. Winterkorn was both responsible for the Challenged Statements and knew or recklessly disregarded that the Challenged Statements were materially false and misleading. Plaintiffs allege that Volkswagen's Board approved resolutions from some of the Group of Five's meetings "[i]n some instances" and conclude that Volkswagen's senior management must have been aware of certain agreements. (AC ¶¶ 7, 32.) But Plaintiffs also acknowledge that "not all forms of cooperation within the industry are illegal," that German automotive companies engage in official, "legitimate cooperative ventures," and that it is "standard practice in the industry to analyze competitors' vehicles." (*Id.* ¶ 34.) Thus, Plaintiffs' allegations are insufficient to show that the Board knew that the alleged agreements were collusive—or that knowledge of the allegedly collusive agreements necessarily equates to knowledge or reckless disregard that the

---

[9] (*See* AC ¶ 17 (alleging Mr. Winterkorn resigned in September 2015); *id.* ¶ 113 (alleging Volkswagen published its 2015 Annual Report in April 2016); *id.* ¶ 128 (alleging publication of 2016 Annual Report in March 2017).)

Challenged Statements are materially false and misleading.[10]  Because Plaintiffs fail to plead a "strong inference of scienter" for Mr. Winterkorn, this Court must dismiss Plaintiffs' § 10(b) claims.

## III.   NEW YORK IS AN INAPPROPRIATE FORUM BECAUSE THE ALLEGED FACTS GIVING RISE TO PLAINTIFFS' CLAIM OCCURRED ELSEWHERE.

Dismissal is also appropriate where, as here, "an alternate forum has jurisdiction to hear the case," and when trial in the chosen forum would establish "oppressiveness and vexation" to defendants "out of all proportion to plaintiff's convenience."  *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 241 (1981).  "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."  *Koster* v. *Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

In deciding whether to dismiss a complaint on the basis of *forum non conveniens*, courts consider:   (i) what "level of deference [is] due to the plaintiff's choice of forum"; (ii) whether "an adequate alternative forum exists"; and (iii) the appropriate "balance [between] the public and private factors articulated by the Supreme Court."  *Wave Studio* v. *Gen. Hotel Mgmt.*, 712 F. App'x 88, 89 (2d Cir. 2018).   This three-step analysis compels dismissal of Plaintiffs' claims.  *First*, Plaintiffs' chosen forum is not entitled to deference because Plaintiffs do not allege any facts showing that they have any connection to New York, and the operative facts giving rise to Plaintiffs' claims occurred outside  the United States.  *Second*, Germany is an

---

[10]  Moreover, Plaintiffs allege only that Volkswagen's Board signed the Annual Reports.  (AC ¶¶ 54, 75, 94, 113, 128.)  Plaintiffs do not specifically allege that any particular member of Volkswagen's Board responsible for the challenged statements knew about the allegedly anticompetitive agreements and knew or recklessly disregarded that those agreements rendered the challenged statements in the Annual Reports materially false and misleading.  As such, Plaintiffs have not "create[d] a strong inference that someone whose intent could be imputed to [Volkswagen] acted with the requisite scienter."  *Dynex*, 531 F.3d at 195.

adequate forum for this litigation.  *Finally*, the balance of public and private interest factors strongly favors dismissal—Volkswagen is incorporated and headquartered in Germany, the Individual Defendants reside in Germany, and most, if not all, of the key witnesses and evidence are in Germany.

A.      **Plaintiffs' Chosen Forum Is Not Entitled to Deference.**

"A citizen's forum choice should not be given dispositive weight," and if "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  *Piper*, 454 U.S. at 256 n.23. "[T]he degree of deference given to a plaintiff's forum choice varies with the circumstances," including "the convenience of the plaintiff's residence in relation to the chosen forum."  *Iragorri* v. *United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001).  Specifically, a plaintiff's choice of forum is entitled to less deference if its choice is not its home forum.  *Sinochem Int'l Co.* v. *Malay. Int'l Shipping*, 549 U.S. 422, 430 (2007).  A plaintiff's choice of forum may also be given less deference if "the operative facts giving rise to the complaint occurred outside of the chosen forum."  *Lynch* v. *Hilton Worldwide*, 2011 WL 5240730, at *3 (D.N.J. Oct. 31, 2011).

Plaintiffs' chosen forum is not entitled to deference because Plaintiffs do not allege that they reside in New York, and nothing in the Amended Complaint suggests that New York is Plaintiffs' home forum.  (*See* AC ¶¶ 13-14.)  Moreover, the relevant securities and disclosures to investors are foreign in character.  The alleged securities—ADRs—are merely receipts establishing beneficial ownership of Volkswagen ordinary and preference shares that are on deposit *in Germany* and listed only on *foreign* securities exchanges.  Put simply, Volkswagen's ADRs do not trade on any U.S. exchange.  As Plaintiffs recognize, the Annual Reports were not filed with the U.S. Securities and Exchange Commission (SEC), and they purchased ADRs on OTC markets.  (*See id.* ¶¶ 1, 13-15.)  In addition, the alleged facts giving rise to Plaintiffs' claims

occurred outside of the United States.  Although Plaintiffs claim that Volkswagen made false and misleading statements in the Annual Reports, more fundamentally, Plaintiffs' factual allegations as to why those statements were false and misleading concern alleged events that took place entirely abroad.  (*E.g.*, *id.* ¶¶ 25-45 (outlining Volkswagen's alleged anticompetitive behavior with other German automobile manufacturers); *id.* ¶ 47 (alleging a "'secret' meeting in Munich").)  Because Plaintiffs do not allege that they reside here, the Annual Reports are issued from Germany, and Plaintiffs' allegations all involve activities that allegedly took place in Europe, New York is not the appropriate forum.

### B.  Germany Is an Adequate Alternative Forum for This Litigation.

As courts have repeatedly recognized, Germany is an adequate alternate forum for Plaintiffs' securities fraud claims.  *See Viking Glob. Equities, LP* v. *Porsche Automobil Holding SE*, 958 N.Y.S.2d 35, 36 (App. Div. 2012) (holding that Germany "provides an adequate alternative forum" for plaintiffs' claims for fraud and unjust enrichment).  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd.* v. *Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).  Volkswagen is incorporated and headquartered in Germany and amenable to service of process there, as are the Individual Defendants.  Furthermore, pursuant to German tort law, any U.S. plaintiffs who purchased Volkswagen securities may bring a securities fraud claim in German courts against Volkswagen.  (Nolden Decl. (Ex. 1) ¶¶ 7, 9.)

### C.  The Public and Private Interest Factors Strongly Favor Litigating in Germany.

The public and private interest factors strongly favor dismissal.  *See Piper*, 454 U.S. at 241.  The public interest factors this Court should consider include the respective interests of the forums.  *See Carey* v. *Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237

(2d Cir. 2004).  This Court should also consider private interest factors such as:  "the interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and, all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*

      Here, the relevant public and private interest factors show that Germany is the superior forum.  Germany has a demonstrable interest in holding Volkswagen, a German corporation, accountable if it violated Germany's stringent public disclosure regulations. Germany's interest in holding Volkswagen accountable is supported by Plaintiffs' allegations that German regulators are inquiring into Volkswagen, collecting evidence, and questioning witnesses.  (AC ¶¶ 52-53.)  Germany's interest is further supported by Plaintiffs' allegations that Volkswagen "filed periodic public reports with the German Federal Financial Supervisory Authority," rather than with the SEC.  (*Id.* ¶ 157(b).)[11]  The relevant private interest factors also strongly favor dismissal.  It would impose undue hardship on Volkswagen and the Individual Defendants to try this case in New York.  Volkswagen is a German corporation with its principal place of business in Germany.  (*Id.* ¶ 15.)  The Individual Defendants reside in Germany, and most, if not all, of the key witnesses reside in Germany, such as other members of Volkswagen's Board and any employees who allegedly participated in the working groups.  Most of the documentary evidence is abroad and in German, as would be much of the deposition and trial

---

[11] In contrast, the interest of the United States is comparatively weaker given that Plaintiffs do not allege that any of the purported anticompetitive conduct underlying Plaintiffs' securities claim took place in the United States, and that none of the Annual Reports were filed with the SEC.

testimony.   Accordingly, this Court should exercise its broad discretion to dismiss Plaintiffs'

Amended Complaint.

## CONCLUSION

Plaintiffs' Amended Complaint is an overreaching effort to impose liability under

U.S. securities laws based on an inquiry by foreign authorities into alleged anticompetitive

conduct abroad.   For the reasons set forth, Volkswagen respectfully requests that the Court

dismiss the Amended Complaint in its entirety with prejudice.[12]

Dated:  September 11, 2018                          Respectfully submitted,

                                                    */s/ Robert J. Giuffra, Jr.*
                                                    Robert J. Giuffra, Jr.
                                                    Suhana S. Han
                                                    Justin J. DeCamp
                                                    SULLIVAN & CROMWELL LLP
                                                    125 Broad Street
                                                    New York, New York  10004-2498
                                                    Telephone:     (212) 558-4000
                                                    Facsimile:     (212) 558-3588

                                                    *Counsel for Volkswagen AG, Matthias Müller,
                                                    Frank Witter, and Hans Dieter Pötsch*

---

[12] Leave to amend should be denied because further amendment would be futile. *Mortimer Off Shore Servs.* v. *Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010) ("It is well-established that '[o]ne good reason to deny leave to amend is when such leave would be futile"). Here, although Plaintiffs have had almost a year to avail themselves of foreign inquiries into Volkswagen's alleged anticompetitive conduct, the Amended Complaint fails for the reasons described above, including that it lacks factual support, relies on inactionable puffery, and does not make out an underlying antitrust conspiracy.  Granting Plaintiffs leave to further amend their Amended Complaint is unlikely to result in a cure of these many independent and substantial defects.