UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WAYNE and LINDA MUCHA, Individually
and on Behalf of All Others Similarly
Situated,

              Plaintiffs,

              v.

VOLKSWAGEN
AKTIENGESELLSCHAFT, MATTHIAS
MÜLLER, MARTIN WINTERKORN,
FRANK WITTER, and HANS DIETER
PÖTSCH,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.:  17-CV-05092 (DLI) (PK)

The Honorable Dora L. Irizarry

ORAL ARGUMENT REQUESTED


## DEFENDANTS MATTHIAS MÜLLER, FRANK WITTER, AND HANS DIETER PÖTSCH'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT


Robert J. Giuffra, Jr.
Suhana S. Han
Justin J. DeCamp
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Volkswagen AG, Matthias Müller,
Frank Witter, and Hans Dieter Pötsch*

September 11, 2018

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ....................................................................................1

**ALLEGATIONS IN THE AMENDED COMPLAINT** ..............................................5

    A.    Plaintiffs' Scienter Allegations ...................................................................5

    B.    Plaintiffs' Misstatement and Omission Allegations ..................................6

**ARGUMENT** ..............................................................................................................7

**I.**    **PLAINTIFFS CANNOT ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER EACH INDIVIDUAL DEFENDANT** ............7

**II.**    **PLAINTIFFS FAIL TO STATE A CLAIM UNDER § 10(B) OF THE EXCHANGE ACT** ..................................................................................11

    A.    Plaintiffs Fail To Adequately Allege Any Actionable Misstatements or Omissions.....................................................................12

    B.    Plaintiffs Fail To Adequately Allege That the Individual Defendants Acted with Scienter ..........................................................13

        1.    Plaintiffs Fail To Allege Adequately Motive and Opportunity ................14

        2.    Plaintiffs Allege No Circumstantial Evidence of Conscious Misbehavior or Recklessness ....................................................16

**III.**    **PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY UNDER § 20(A)** ..................................................................................20

**CONCLUSION** ..........................................................................................................24

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   398 F. Supp. 2d 244 (S.D.N.Y. 2005) .......................................................................................21

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................7

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ............................................................................................ *passim*

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...........................................................................4, 14, 15

*Basic Inc.* v. *Levinson*,
   485 U.S. 224 (1988) ............................................................................................................4, 13

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) .............................................................................................................7, 18

*In re Braskem S.A. Sec. Litig.*,
   246 F. Supp. 3d 731 (S.D.N.Y. 2017) .........................................................................................8

*C.D.T.S.* v. *UBS AG*,
   2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) .......................................................................4, 18

*In re Cannavest Corp. Sec. Litig.*,
   307 F. Supp. 3d 222 (S.D.N.Y. 2018) ......................................................................................21

*In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*,
   2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) .............................................................................15

*In re CINAR Corp. Sec. Litig.*,
   186 F. Supp. 2d 279 (E.D.N.Y. 2002) .......................................................................................9

*Dalberth* v. *Xerox Corp.*,
   766 F.3d 172 (2d Cir. 2014) ....................................................................................................13

*Dura Pharm., Inc.* v. *Broudo*,
   544 U.S. 336 (2005) .................................................................................................................11

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) .......................................................................................................18

*Filler* v. *Hanvit Bank*,
    2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003).........................................................11

*Finocchiaro* v. *NQ Mobile, Inc.*,
    2018 WL 1217728 (S.D.N.Y. Feb. 27, 2018).........................................................13

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ..................................................................17

*Gregory* v. *ProNAi Therapeutics Inc.*,
    297 F. Supp. 3d 372 (S.D.N.Y. 2018)..................................................................14

*Gruber* v. *Gilberston*,
    2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ......................................................22

*In re Hutchinson Tech., Inc. Sec. Litig.*,
    536 F.3d 952 (8th Cir. 2008) .............................................................................17

*Kalnit* v. *Eichler*,
    264 F.3d 131 (2d Cir. 2001)...............................................................13, 14, 15, 16

*Keeton* v. *Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)........................................................................................8, 11

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ..............................................................4, 19

*Levy* v. *Maggiore*,
    48 F. Supp. 3d 428 (E.D.N.Y. 2014) .....................................................................22

*McIntire* v. *China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)..................................................................21

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................... *passim*

*Ong* v. *Chipotle Mexican Grill*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018).................................................................4, 12

*Palm Beach Strategic Income, LP* v. *Salzman*,
    2011 WL 1655575 (E.D.N.Y. May 2, 2011) ...........................................................7

*Penguin Grp. (USA) Inc.* v. *Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)...............................................................................7, 8

*In re PXRE Group, Ltd., Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)..................................................................20

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...................................................................21

*In re Rockwell Med., Inc. Sec. Litig.*,
    2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) .......................................................16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ......................................................................10

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)....................................................................................16

*San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Phillip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ................................................................................3, 16

*Schaffer* v. *Horizon Pharma PLC*,
    2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .........................................................18

*SEC* v. *Sharef*,
    924 F. Supp. 2d 539 (S.D.N.Y. 2013)........................................................... *passim*

*SEC* v. *Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013).....................................................................9

*SEC* v. *Unifund SAL*,
    910 F.2d 1028 (2d Cir. 1990)..................................................................................8

*Special Situations Fund III QP, L.P.* v. *Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).....................................................................20

*In re Sportsline.com Sec. Litig.*,
    366 F. Supp. 2d 1159 (S.D. Fla. 2004) .................................................................15

*In re Stratasys Ltd. S'holder Sec. Litig.*,
    864 F.3d 879 (8th Cir. 2017) ............................................................................3, 17

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................13, 14, 17

## Statutes and Rules

15 U.S.C. § 78aa ...............................................................................................................8

15 U.S.C. § 78u-4(b) ..................................................................................................12, 13

Fed. R. Civ. P. 9(b) ....................................................................................................11, 12

PSLRA ......................................................................................................................12, 13

Rule 12(b)(6)........................................................................................................................7

**Other Authorities**

*Investor Bulletin: American Depository Receipts*, SEC Office of Inv'r Educ. &
    Advocacy 2 (Aug. 2012), https://www.sec.gov/investor/alerts/adr-bulletin.pdf ....................10

Defendants Matthias Müller, Frank Witter, and Hans Dieter Pötsch (collectively, the "Individual Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs Wayne and Linda Mucha's Amended Complaint.[1]

## PRELIMINARY STATEMENT

In July 2017, the German magazine *Der Spiegel* published an article claiming that certain German automobile manufacturers, including Volkswagen AG ("Volkswagen"), engaged in anticompetitive activity.  Based on the allegations in this article, Plaintiffs filed suit in August 2017 against Volkswagen, as well as certain officers and members on Volkswagen's Board of Management (the "Board"), including Matthias Müller, then-Chairman of Volkswagen's Board; Frank Witter, a Member of Volkswagen's Board for Finance and Controlling since October 2015; and Hans Dieter Pötsch, also a Member of Volkswagen's Board for Finance and Controlling from 2003 until October 2015.[2]  Plaintiffs thereafter filed an amended complaint (the "Amended Complaint") against Volkswagen and the Individual Defendants on July 13, 2018, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act (the "Exchange Act"). Essentially, Plaintiffs theorize that certain statements (the "Challenged Statements") in Volkswagen's Annual Reports from 2012 through 2016 (the "Annual Reports") were false or made misleading due to Volkswagen's failure to disclose its alleged anticompetitive conduct.

Plaintiffs' reliance on the July 2017 *Der Spiegel* article, as well as a subsequent *Der Spiegel* article from January 2018, to support their claims against the Individual Defendants

---

[1] The Individual Defendants join in Volkswagen AG's Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint ("Volkswagen's Memorandum"), and submit this separate memorandum to make additional arguments for dismissal of Plaintiffs' claims.

[2] Plaintiffs also sued Martin Winterkorn, the Company's Chairman of the Board from 2007 until September 2015.

is fatal, because the articles do not indicate that any of the Individual Defendants knew about or were involved in the alleged anticompetitive activity.  Thus, the Amended Complaint does not plead with the requisite particularity that each of the Individual Defendants had knowledge of the alleged anticompetitive conduct.  In attempting to bootstrap foreign regulatory antitrust inquiry into claims of securities fraud against Volkswagen's top officers, the Amended Complaint fails and should be dismissed for at least the following four reasons:[3]

*First*, Plaintiffs cannot meet their burden of demonstrating that this Court has personal jurisdiction over the nonresident Individual Defendants.  None of the Annual Reports containing the Challenged Statements were filed with the SEC.  Rather, the Annual Reports containing the alleged misstatements were filed in Germany—as Plaintiffs admit (Am. Compl. ("AC") ¶ 157(b))—pursuant to Volkswagen's obligations as a German publicly traded company. Nor do Plaintiffs allege with any specificity *what* their purchased securities were, or *how* those securities or the purported anticompetitive conduct relate to the United States.  Because the Annual Reports containing the Challenged Statements were filed in Germany and none of the anticompetitive conduct is alleged to have occurred in the United States, this Court does not have personal jurisdiction over the Individual Defendants.  *See SEC* v. *Sharef*, 924 F. Supp. 2d 539, 544-45 (S.D.N.Y. 2013).

*Second*, Plaintiffs fail to allege that each of the Individual Defendants acted with the requisite state of mind in making any of the Challenged Statements.  Specifically, Plaintiffs do not allege a "strong inference" of scienter through facts showing that the Individual Defendants "had both motive and opportunity to commit the fraud" or "constituting strong

---

[3] In addition to the reasons for dismissal set forth in this motion, the Individual Defendants adopt the arguments for dismissal set forth in Volkswagen Memorandum.

circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Ganino* v. *Citizens Utils. Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000)).  The Amended Complaint merely pleads facts regarding goals— such as avoiding "expos[ure] . . . to criminal and civil proceedings" and "injur[y to] the Company's business prospects (AC ¶ 48)—that are "possessed by virtually all corporate insiders" and as such are not sufficient to demonstrate motive.  *Novak* v. *Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Phillip Morris Cos.*, 75 F.3d 801, 814 (2d Cir. 1996)).  In addition, Plaintiffs do not show a strong inference of scienter through circumstantial evidence of conscious misbehavior or reckless disregard for the truth.  Plaintiffs posit that Volkswagen's voluntary declaration in July 2016 to European authorities of participation in allegedly anticompetitive conduct is "strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (citation omitted).  But this allegation does not create a "strong inference" of scienter because Plaintiffs do not allege that the Individual Defendants knew that the Challenged Statements in the 2012 through 2015 Annual Reports, which preceded the July 2016 declaration, were false when made.  "Without tying the timing of the knowledge to the allegedly misleading statements," Plaintiffs "do not plead facts sufficient to support a strong inference of scienter." *In re Stratasys Ltd. S'holder Sec. Litig.*, 864 F.3d 879, 883-84 (8th Cir. 2017) (citation omitted).  Plaintiffs also emphasize that Volkswagen and other German automobile manufacturers proceeded with collusive conduct in the face of warnings from attorneys and allege that a Volkswagen manager authored an email describing how another German automobile manufacturer had its legal advisors examine an issue associated with collusion.  Plaintiffs, however, fail to allege that the Individual Defendants had knowledge of these warnings from another automobile manufacturer's legal advisors.

-3-

Plaintiffs' other allegations of circumstantial evidence fare no better. For example, Plaintiffs cite Mr. Winterkorn's hands-on management style to try to show scienter. But scienter "must be separately pled and individually supportable as to each defendant," and allegations regarding one individual—Mr. Winterkorn—are insufficient to show a strong inference of scienter on behalf of the Individual Defendants. *C.D.T.S.* v. *UBS AG*, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013) (citation omitted). Further, although Plaintiffs attempt to allege scienter by virtue of the Individual Defendants' position on Volkswagen's Board, "allegations that defendants must be charged with knowledge of activities at [the company] by virtue of their high-level positions are . . . insufficient." *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387 (E.D.N.Y. 2003) (citation omitted).

*Third*, as explained in Volkswagen's Memorandum, the general and vague statements Plaintiffs cite in the Annual Reports are inactionable as a matter of law. Many of these statements are couched in aspirational language, and are "quintessential examples" of corporate puffery. *Ong* v. *Chipotle Mexican Grill*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (quoting *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 647 (S.D.N.Y. 2017)). In addition, many of the statements Plaintiffs cite are not adequately alleged to be false. Nor do Plaintiffs demonstrate that Individual Defendants had a duty to disclose the alleged anticompetitive conduct and "[s]ilence, absent a duty to disclose, is not misleading." *Basic Inc.* v. *Levinson*, 485 U.S. 224, 239 n.17 (1988).

*Finally*, because Plaintiffs' § 10(b) claims fail, their § 20(a) claims also fail. *ATSI*, 493 F.3d at 99.

## ALLEGATIONS IN THE AMENDED COMPLAINT

Relying on July 2017 and January 2018 reports in the German periodical *Der Spiegel*, Plaintiffs allege that Volkswagen submitted to the European Commission and the German Federal Cartel Office a "voluntary declaration" of its "participation in suspected cartel infringements" on July 4, 2016.  (AC ¶¶ 2, 53.)  Plaintiffs further allege that the European Commission and the German Federal Cartel Office are investigating a group of five German automotive companies (the "Group of Five"), including Volkswagen, for collusive conduct.  (*Id.* ¶ 53.)  Among the alleged collusive conduct is Volkswagen's (i) participation in working groups relating to automobile engines, chassis, clutches, air suspensions, brakes, and seats, and (ii) exchanging sensitive, proprietary data on technology and suppliers.  (*Id.* ¶ 2.)

Plaintiffs generally allege that Volkswagen's Board signed the Annual Reports.  (*Id.* ¶¶ 54, 75, 94, 113, 128.)  But Plaintiffs never allege that any of the Annual Reports were filed with the SEC, and they acknowledge that none of the Individual Defendants was on Volkswagen's Board during the entire relevant period—and thus that none of the Individual Defendants signed all of the Annual Reports containing the Challenged Statements.  Plaintiffs acknowledge that Mr. Müller "has been the Company's Chairman of the Board of Management since September 2015," Mr. Witter "has been [on] the Company's Board of Management Member for Finance and Controlling since October 2015," and that Mr. Pötsch "was the Company's Board of Management Member for Finance and Controlling . . . until October 2015."  (*Id.* ¶¶ 16, 17, 19.)

### A.     Plaintiffs' Scienter Allegations

Plaintiffs allege that the Individual Defendants collectively "knew or were reckless in not knowing" that the Challenged Statements in Volkswagen's Annual Reports were false and misleading.  (*Id.* ¶ 7.)  Plaintiffs further allege that some of the alleged collusive

conduct involved approval by Volkswagen's Board. (*Id.*)  Specifically, Plaintiffs conclude that the "scope, duration, and impact" of agreements among the Group of Five and the numbers of personnel involved "undermine any assertion by Volkswagen that its senior management were unaware that cartel activities were taking place." (*Id.* ¶ 32.)  Plaintiffs further allege that Volkswagen acted "in the face of warnings from in-house and outside attorneys," and that Mr. Winterkorn was a "notorious micromanager." (*Id.* ¶¶ 50-51.)  Plaintiffs make no specific allegations about what information the Individual Defendants knew or should have known, or how or when they knew or should have known that information.  Indeed, outside the Individual Defendants' positions on Volkswagen's Board, Plaintiffs make no attempt to distinguish when and where any of the Individual Defendants had access to information pertaining to the alleged anticompetitive conduct or the Challenged Statements.

## B.    Plaintiffs' Misstatement and Omission Allegations

Plaintiffs allege that the Challenged Statements in Volkswagen's Annual Reports were materially false and misleading.  As discussed in greater detail in Volkswagen's Memorandum, the Challenged Statements fall into three categories: (1) Corporate Culture Statements; (2) Innovation Statements; and (3) Market Statements.[4]  The Corporate Culture Statements include statements about Volkswagen's integrity and commitment to compliance, including that "[c]ompliance with international rules and the fair treatment of our business partners and competitors are among the guiding principles followed by [Volkswagen]," and "obligations undertaken and ethical principles accepted voluntarily also form an integral part of [Volkswagen's] corporate culture."  (AC ¶ 67.)  The Innovation Statements include statements about Volkswagen's technological innovation and growth position, including that Volkswagen

---

[4] The Challenged Statements are catalogued in Appendix A of Volkswagen's Memorandum.

was "pursuing the goal of offering all customers the mobility and innovation they need" and offered an extensive range of vehicles "that is unparalleled in the industry."   (*Id.* ¶¶ 59, 63.)   The Market Statements include statements about market prices and price volatility of raw materials and commodities, as well as statements about "the difficult market environment and increasingly fierce competition."   (*See, e.g.*, *id.* ¶¶ 55, 57, 61.)   Plaintiffs assert that such statements were materially false and misleading because Volkswagen knew or recklessly disregarded that it "was engaged in anticompetitive conduct in concert with the other members of the Group of Five." (*Id.* ¶ 56.)

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), this Court must accept as true well-pled factual allegations in the Amended Complaint.   *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). This Court, however, need not accept legal conclusions, mere conclusory statements, naked assertions, or implausible inferences.   *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 677-78 (2009).   Nor is it required to "accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice."   *Palm Beach Strategic Income, LP* v. *Salzman*, 2011 WL 1655575, at *7 n.12 (E.D.N.Y. May 2, 2011) (citation omitted).

## ARGUMENT

### I.   PLAINTIFFS CANNOT ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER EACH INDIVIDUAL DEFENDANT.

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."   *Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).   Critically, this burden must be satisfied with respect to each defendant individually, and "jurisdiction over an employee does not automatically follow

from jurisdiction over the corporation which employs him." *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (citations omitted).  When a defendant "is not located in the United States, '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.'"  *Sharef*, 924 F. Supp. 2d at 548 (alteration in original) (quoting *Asahi Metal Indus. Co.* v. *Superior Court of Cal.*, 480 U.S. 102, 115 (1987)).  Here, Plaintiffs cannot meet their "burden of demonstrating personal jurisdiction" over the nonresident Individual Defendants.  *Penguin Grp.*, 609 F.3d at 34.

Federal courts maintain jurisdiction under § 27 of the Exchange Act, 15 U.S.C. § 78aa, which "permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment."  *SEC* v. *Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (citations omitted).  Personal jurisdiction over a nonresident defendant does not satisfy due process unless (1) "the defendant has sufficient minimum contacts with the forum," and (2) "the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 767 (S.D.N.Y. 2017) (citations omitted) (granting motion to dismiss for want of personal jurisdiction in investor action under § 10(b) and § 20(a)).  "To establish the minimum contacts necessary to satisfy due process, the plaintiff must show that his claim arises out of, or relates to, the defendant's contacts with the forum" and that "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Sharef*, 924 F. Supp. 2d at 544-45.[5]

---

[5] Because § 27 of the Exchange Act provides for nationwide service of process, the minimum contacts requirement applies to contacts with the United States as a whole.  15 U.S.C. § 78aa; *Sharef*, 924 F. Supp. 2d at 544.

Under this standard, courts cannot exercise personal jurisdiction over defendants where the underlying claims are premised on documents never signed or filed with the SEC.[6] *See Sharef*, 924 F. Supp. 2d at 544-45.  In *Sharef*, the district court dismissed for lack of personal jurisdiction an SEC action brought against a senior executive of a German company who allegedly facilitated bribes of Argentine officials because the executive had no role in preparing the false financial statements filed in the United States.  *Id.* at 548-49.  The court expressly rejected the SEC's argument that the German executive's support of a bribery scheme directed entirely at a foreign jurisdiction satisfied the Due Process Clause's minimum contacts requirement because under that theory "*every* participant in illegal action taken by a foreign company subject to U.S. securities laws would be subject to the jurisdiction of U.S. courts no matter how attenuated their connection with the falsified financial statements."  *Id.* at 547.  The court observed that if the executive's support of the "bribery scheme satisfied the minimum contacts analysis, even though he neither authorized the bribe, nor directed the cover up, much less played any role in the falsified filings, minimum contacts would be boundless."  *Id.*

Here, Plaintiffs do not show that their claims "arise[] out of, or relate[] to, the [Individual Defendants'] contacts with the [United States] . . . [and that] the [Individual Defendants] purposefully availed [themselves] of the privilege of doing business in the forum and could foresee being haled into court []here."  *Id.* at 544-45.  Although signing an SEC filing can be a basis for personal jurisdiction, *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d at 306,

---

[6] *See, e.g.*, *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 306 (E.D.N.Y. 2002) (upholding jurisdiction where Canadian general counsel defendant signed an allegedly fraudulent registration statement because she "could have reasonably foreseen that, were there to be litigation concerning the [s]tatement, she would be haled into court in the United States"); *SEC* v. *Straub*, 921 F. Supp. 2d 244, 259 (S.D.N.Y. 2013) (upholding jurisdiction where executives of Hungarian telecommunications company signed allegedly fraudulent SEC filings).

Plaintiffs have not pointed to *any* documents filed with the SEC in their Amended Complaint. Instead, Plaintiffs rely exclusively on allegedly false statements in Volkswagen's Annual Reports, but never allege (nor could they allege) that such reports were filed with the SEC or any U.S. regulator.  (*See* AC ¶ 157(b) (alleging that "[a]s a regulated issuer, Volkswagen filed periodic public reports with the German Federal Financial Supervisory Authority").[7]  This glaring omission warrants dismissal on personal jurisdiction grounds because Plaintiffs have not alleged any connection between allegedly false statements in foreign reports and the United States.  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004) (no specific jurisdiction over supervisory board member of ADR issuer who "signed no SEC filings").

Without a signature on an SEC filing as a basis for personal jurisdiction, Plaintiffs must allege that the Individual Defendants engaged in conduct directed at the United States that has a direct connection with the alleged misstatements.  *See Sharef*, 924 F. Supp. 2d at 544-45.  Plaintiffs, however, fail to allege with sufficient particularity that any of the Individual Defendants were aware of, let alone participated in, alleged anticompetitive conduct directed at the United States.[8]  Instead, Plaintiffs rely on conclusory allegations, including that the

---

[7] Plaintiffs' Amended Complaint further recognizes that the Annual Reports filed in Germany were not filed with the SEC, as it alleges that Plaintiffs purchased their securities on OTC markets (*see* AC ¶¶ 13-15), and never alleges that Volkswagen filed annual or quarterly reports with the SEC.  Volkswagen sponsored Level 1 American Depositary Receipts ("ADR"), which required it to file only a Form F-6 registration statement, which "contains no information about the non-U.S. company."  *See Investor Bulletin: American Depository Receipts*, SEC Office of Inv'r Educ. & Advocacy 2 (Aug. 2012), https://www.sec.gov/investor/alerts/adr-bulletin.pdf.  No annual or quarterly reports are required for sponsored Level 1 ADRs.  *See id.* (noting that Level 1 ADR issuers are required only to file a "Form F-6" and that "[n]o information about the issuer would be available on the SEC's EDGAR system").

[8] In a similar vein, Plaintiffs fail to allege with particularity facts that give rise to a "strong inference" of scienter.  *See infra* Section II.B.

Individual Defendants "directly participated in the management of the Company" and were "directly involved in the day-to-day operations of the Company at the highest levels" (*E.g.*, AC ¶ 21(a)-(b)), to support their claim that the Individual Defendants had knowledge of the alleged anticompetitive conduct.  Allegations, such as those made by Plaintiffs here, "that are conclusory or unsupported by factual assertions are insufficient" in satisfying Rule 9(b)'s heightened pleading standards.  *ATSI*, 493 F.3d at 99.[9]

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER § 10(B) OF THE EXCHANGE ACT.

To state a claim under § 10(b), Plaintiffs must allege (i) a material misrepresentation or omission, (ii) with scienter, (iii) in connection with the purchase or sale of a security, (iv) reasonable reliance by the plaintiff on the misrepresentation or omission, (v) economic loss, and (vi) a loss proximately caused by the misrepresentation or omission. *Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 341-42 (2005).  As demonstrated in Volkswagen's Memorandum, as well as in the arguments below, even assuming Plaintiffs have adequately pled the last four elements, Plaintiffs fail to plead the first two elements—actionable statements and

---

[9] Plaintiffs also suggest that the Board must have known about the alleged collusive activity because Mr. Winterkorn "was 'a notorious micromanager' . . .who carried with him a 'micrometer.'" (AC ¶ 51.)  But this allegation, which only concerns Mr. Winterkorn and not any of the Individual Defendants, is the very type of group pleading that has been found to be insufficient under Rule 9(b).  *See Filler* v. *Hanvit Bank*, 2003 WL 22110773, at *3 (S.D.N.Y. Sept. 12, 2003) (holding that the plaintiffs had failed to meet the requirements of Rule 9(b) because they failed to "make allegations with respect to each defendant"); *cf. Keeton*, 465 U.S. at 781, n. 13 ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.").  Because Plaintiffs do not allege that the Individual Defendants signed the Annual Reports containing many of the Challenged Statements and do not allege that the Individual Defendants engaged in conduct aimed at the United States that is directly connected to those statements, this Court does not have personal jurisdiction over the Individual Defendants.  Insofar as Plaintiffs point to statements in the Annual Reports that the Individual Defendants did sign, those statements are not false or misleading.  *See infra* Section II.A.

scienter—with the requisite particularity, and Plaintiffs' claim under § 10(b), accordingly, must be dismissed.

> ### A.     Plaintiffs Fail To Adequately Allege Any Actionable Misstatements or Omissions.

As explained in Volkswagen's Memorandum, which the Individual Defendants adopt herein, this Court should dismiss Plaintiffs' § 10(b) claims because the Challenged Statements are mere puffery, Plaintiffs fail to allege particularized facts showing that the Challenged Statements were materially false, and Plaintiffs do not demonstrate that Volkswagen had a duty to disclose uncharged wrongdoing.

As an initial matter, Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA") require that Plaintiffs satisfy heightened pleading requirements concerning any alleged materially false and misleading statements or omissions. Plaintiffs must "alleg[e] fraud" by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

As explained in Volkswagen's Memorandum, the Challenged Statements should all be dismissed for the following two reasons. *First*, all of the Challenged Statements are inactionable because they constitute puffery or are inadequately alleged to be false. (*See* Volkswagen's Memo. at Section I.A.) For example, the Corporate Culture Statements (*e.g.*, AC ¶¶ 67, 80, 99, 116, 131), which are couched in aspirational language, are "quintessential examples" of corporate puffery. *Ong*, 294 F. Supp. 3d at 232. In addition, the Innovation Statements—such as Volkswagen becoming "more innovative" and "more international" (AC

¶ 76)—are similar to statements that courts already have deemed to be puffery because they are "so vague" and "lacking in specificity" that no reasonable investor could rely on them. *Finocchiaro* v. *NQ Mobile, Inc.*, 2018 WL 1217728, at *5 (S.D.N.Y. Feb. 27, 2018) (citation omitted). Plaintiffs' alleged Market Statements are similarly inactionable because, in addition to being puffery, Plaintiffs plead no facts showing that those statements were false when made. *Second*, Plaintiffs do not show that Volkswagen had a duty to disclose any alleged, unproven wrongdoing. (*See* Volkswagen's Memo. at Section I.B; *Basic Inc.* v. *Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."); *Dalberth* v. *Xerox Corp.*, 766 F.3d 172, 183 (2d Cir. 2014) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." (citation omitted)).)

### B. Plaintiffs Fail To Adequately Allege That the Individual Defendants Acted with Scienter.

Under the PSLRA's scienter requirement, a plaintiff alleging fraud under § 10(b) must state "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The requisite state of mind is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted); *see Kalnit* v. *Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) ("[T]o be adequate, scienter allegations must 'give rise to a strong inference of fraudulent intent.'" (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 307 (2d Cir. 2007))). To establish a "strong inference" of scienter, Plaintiffs must allege particularized facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99 (citation omitted). For an inference of scienter to be strong, Plaintiffs "must plead facts

rendering an inference of scienter at least as likely as any plausible opposing inference." *Tellabs*, 551 U.S. at 328. Plaintiffs generalized allegations fail to support a strong inference of scienter based on either (1) motive and opportunity; or (2) circumstantial evidence of conscious misbehavior or recklessness.

### 1.   Plaintiffs Fail To Allege Adequately Motive and Opportunity.

Plaintiffs devote *one* sentence in their 176-paragraph Amended Complaint to describe two possible motives, and neither is sufficient to establish a "strong inference" of scienter on the part of the Individual Defendants. (*See* AC ¶ 48.) Specifically, Plaintiffs allege that "Defendants were motivated to keep the Group of Five's collusive activities secret because, if exposed, such information could have exposed the participants to criminal and civil proceedings and injured the Company's business prospects." (*Id.*) "Sufficient motive allegations 'entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *Gregory* v. *ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 414 (S.D.N.Y. 2018) (quoting *Kalnit*, 264 F.3d at 139). Allegations regarding goals that are "possessed by virtually all corporate insiders" are not sufficient to demonstrate motive. *Novak*, 216 F.3d at 307. The mere allegation that a defendant's compensation depends on corporate earnings or corporate value, for example, generally does not establish motive. *Id.* (characterizing "the desire to maintain a high stock price in order to increase executive compensation" as a motive "possessed by virtually all corporate insiders"); *see Gregory*, 297 F. Supp. 3d at 414 ("[P]laintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."). Even "the avoidance of personal liability" is a motive that "is too speculative and conclusory to support scienter." *Kalnit*, 264 F.3d at 140; *see Banco Bradesco*, 277 F. Supp. 3d at 665 (explaining as insufficient motive why plaintiff's allegation that "Individual

Defendants were personally motivated to 'conceal [a] tax bribery scheme from the public in order to avoid potential criminal liability").

Here, the Amended Complaint is devoid of specific allegations to support a strong inference of scienter based on motive and opportunity.   Plaintiffs' motive allegations that "Defendants were motivated to keep the Group of Five's collusive activities secret because . . . such information could have exposed the participants to criminal and civil proceedings" is inadequate to serve as an actionable motive.  (AC ¶ 48.)  "Such a motive, if accepted as sufficient to allege a strong inference of scienter, would apply to every defendant in every case, effectively rendering the scienter requirement a nullity."  *Banco Bradesco*, 277 F. Supp. 3d at 665.  The Individual Defendants' alleged desire to keep the "collusive activities secret" to "avoid criminal and civil proceedings" is thus insufficient because "the avoidance of personal liability" is a motive that "is too speculative and conclusory to support scienter." *Kalnit*, 264 F.3d at 140; *Banco Bradesco*, 277 F. Supp. 3d at 665.

Similarly, Plaintiffs' claim that the Individual Defendants' motive not to disclose the alleged collusion in the Annual Reports to avoid "injur[ing] the Company's business prospects" (AC ¶ 48) does not suffice to demonstrate a strong inference of scienter because it is a motive that is "possessed by virtually all corporate insiders."  *Novak*, 216 F.3d at 307; *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1171 (S.D. Fla. 2004) ("[A]llegations of a motive to maintain stock price or enhance a Company's business prospects cannot support a strong inference of scienter." (citations omitted)).  Accordingly, "Plaintiffs' conclusory language about a desire to conceal is insufficient to create a 'strong inference' that [the Individual] Defendants acted with the required state of mind."  *In re China Mobile Games & Entm't Grp.,*

*Ltd Sec. Litig.*, 2016 WL 922711, at *7 (S.D.N.Y. Mar. 7, 2016) (citation omitted) (granting motion to dismiss §§ 10(b) and 20(a) claims).

### 2. Plaintiffs Allege No Circumstantial Evidence of Conscious Misbehavior or Recklessness.

A plaintiff who cannot show scienter by alleging motive and opportunity may still raise a strong inference of scienter by identifying circumstantial evidence of conscious misbehavior or reckless disregard for the truth, "though the strength of the circumstantial allegations must be correspondingly greater" if there is no motive. *Kalnit*, 264 F.3d at 142 (citation omitted). Conscious misbehavior "is easily identified since it encompasses deliberate illegal behavior." *Novak*, 216 F.3d at 308. A "reckless disregard for the truth" is harder to identify and means "'conscious recklessness'—i.e., a state of mind 'approximating actual intent, and not merely a heightened form of negligence.'" *Id.* (citation omitted); *see S. Cherry St., LLC v. Hennessy Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *13 (S.D.N.Y. Mar. 30, 2018) ("'Reckless disregard for the truth' sets a high bar; it is after all a theory of liability based on fraud."). To properly plead recklessness, a plaintiff may either specifically allege defendant's knowledge of facts or access to information contradicting defendant's public statements, or allege that the defendant failed to check information that he or she had a duty to monitor. *Novak*, 216 F.3d at 308. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Id.* (quoting *San Leandro*, 75 F.3d at 812).

In this case, Plaintiffs do not adduce circumstantial evidence indicating conscious misbehavior or recklessness. Although Plaintiffs repeatedly claim in conclusory fashion that "Defendants knew or recklessly disregarded that . . . Volkswagen was engaged in anticompetitive conduct" (*e.g.*, AC ¶¶ 56, 58, 62), the Amended Complaint's scant factual

allegations do not give rise to a "strong inference" of scienter.   In a muddled section entitled "Defendants' Knowledge or Reckless [D]isregard of the German Auto Cartel" (AC ¶¶ 46-51), Plaintiffs erroneously rely on five allegations in an effort to show circumstantial evidence of conscious misbehavior or recklessness.

   *First*, Plaintiffs claim that "Volkswagen's July 4, 2016 voluntary declaration" to European authorities "of its 'participation in suspected cartel infringements,'" is "evidence that Defendants had actual or constructive knowledge of the Group of Five's collusive activities." (AC ¶ 46.)   This allegation does not create a "strong inference" of scienter because the challenged statements in the 2012-2015 Annual Report preceded "Volkswagen's July 4, 2016 voluntary declaration," (*id.*; *Stratasys Ltd.*, 864 F.3d at 883-84 ("[A]dequately pled scienter must demonstrate that a defendant knew a statement was false at the moment it was made.   Without tying the timing of the knowledge to the allegedly misleading statements, the shareholders do not plead facts sufficient to support a strong inference of scienter.").)   It is thus entirely plausible that the Individual Defendants did not have "actual or constructive knowledge" of alleged "collusive activities" before 2016.   Plaintiffs "must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference" and here, Plaintiffs fail to do so.  *Tellabs*, 551 U.S. at 328.[10]

   *Second*, Plaintiffs allege that "the Group of Five . . . proceeded with their collusive activities in the face of warnings from in-house and outside attorneys."  (AC ¶ 50; *see*

---

[10]   In any event, allegations of government investigations of defendant companies cannot, on their own, meet the requisite level of scienter.  *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) ("[T]he existence of an investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter . . . ."); *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008) ("consider[ing] the SEC's opening and closing an investigation irrelevant to the issue of [plaintiff's] complaint sufficiency" and stating "[t]he mere existence of an SEC investigation does not . . . add an inference of scienter.").

*id.* ¶ 7 ("[The Group of Five] even sought advice of both in-house and external legal counsel who advised that such conduct raised 'serious' or 'considerable' concerns.").)  Plaintiffs allege that "a VW manager wrote in an email" that Daimler had its legal advisors examine the issue of a competitor filing a complaint with the cartel office.  (AC ¶ 50.)  Notably, Plaintiffs fail to "specifically allege" that the Individual Defendant had knowledge of these purported warnings from Daimler's legal advisors or that the Individual Defendants "had a duty to monitor" this unidentified "VW manager."  *Novak*, 216 F.3d at 308.  In light of Plaintiffs' failure to plead, much less plead with particularity, circumstantial evidence of conscious misbehavior or reckless disregard for the truth, the Amended Complaint does not show a "strong inference" of scienter.

   *Third*, Plaintiffs allege that Mr. Winterkorn was "a notorious micromanager," who carried with him "a micrometer . . . , so he could personally measure VW parts and tolerances down to the hundredth of a millimeter."  (AC ¶ 51.)  But this conclusory factual allegation regarding Mr. Winterkorn's hands-on management style cannot establish a strong inference of scienter as to the Individual Defendants because scienter "must be separately pled and individually supportable as to each defendant."  *C.D.T.S.*, 2013 WL 6576031, *6.  Where, as here, "Plaintiffs make no attempt to establish scienter with respect to each Individual Defendant," their Exchange Act claims must be dismissed.  *Schaffer* v. *Horizon Pharma PLC*, 2018 WL 481883, at *11 (S.D.N.Y. Jan. 18, 2018).[11]

---

[11] Plaintiffs also claim that Mr. Winterkorn "acted in accordance with instructions from the Company's Board of Management" to authorize continued concealment of "defeat devices" from U.S. regulators.  (AC ¶ 51.)  To the extent that Plaintiffs rely on an allegation concerning the Board's alleged concealment of defeat devices from U.S. regulators to support a claim of scienter as to the concealment of collusive activity in Europe, Plaintiffs' reliance would be sorely misplaced.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (allegations that "if it happened there, it could have happened here" do not suffice to push "claims across the line from conceivable to plausible" (quoting *Twombly*, 550 U.S. at 570)) .

*Fourth*, Plaintiffs baldly allege that "many employees and affiliates of the [Group of Five] knew that they were engaged in coordinated actions with respect to virtually all aspects of the industry." (AC ¶ 47.)   But Plaintiffs do not plead that the *Individual Defendants* knew that the Group of Five was "engaged in coordinated actions." This type of threadbare pleading does not show a "strong inference" of scienter because there are no specific allegations regarding the Individual Defendants' knowledge or recklessness.   Instead of specifically alleging the Individual Defendants' involvement in or awareness of the alleged anticompetitive conduct and purported falsity of the Challenged Statements, Plaintiffs merely allege that the Individual Defendants "directly participated in the management of the Company" and were "directly involved in the day-to-day operations of the Company at the highest levels." (*Id.* ¶ 21.) In effect, Plaintiffs ask this Court to find scienter simply by virtue of the position the Individual Defendants hold within the company.   This Court should refuse Plaintiffs' invitation to do so. *See Keyspan*, 383 F. Supp. 2d at 387 ("Plaintiffs' allegations that defendants must be charged with knowledge of activities at [the company] by virtue of their high-level positions are . . . insufficient.").

*Finally*, in a section of the Amended Complaint entitled "The German Auto Cartel" Plaintiffs attempt to demonstrate scienter by emphasizing the alleged magnitude and duration of the anticompetitive activity. (*See* AC ¶ 31 ("The Group of Five's cartel agreements 'extend across such a long time period and so many managers were involved.'").) Plaintiffs suggest that given the alleged magnitude and duration of the purported collusion, the Individual Defendants must have known about the anticompetitive activity. (*Id.* ¶ 32 ("The scope, duration, and impact of such agreements, as well as the organizational structures, the records maintained, and the numbers of personnel from each Group of Five participant, undermine any assertion by

Volkswagen that its senior management were unaware that cartel activities were taking place.").)

Try as they might, Plaintiffs' reliance on the alleged magnitude of the purported collusive activity to show circumstantial evidence of scienter is unavailing. "While certainly a relevant factor, it is well established that 'the size of the fraud alone does not create an inference of scienter.'" *In re PXRE Group, Ltd., Sec. Litig.*, 600 F.Supp.2d 510, 545 (S.D.N.Y. 2009) (citation omitted). "[E]ven fraud of Madoff proportions does not, in and of itself, justify an inference of scienter in the absence of allegations of awareness of red flags." *Special Situations Fund III QP, L.P.* v. *Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 433 (S.D.N.Y. 2014). Because Plaintiffs' other allegations fail to otherwise support a strong inference of scienter, the magnitude of the alleged fraud cannot justify an inference of scienter. Consequently, Plaintiffs do not show circumstantial evidence of conscious misbehavior or recklessness. Having failed to support a strong inference of scienter through motive and opportunity, or circumstantial evidence of conscious misbehavior or recklessness, Plaintiff's Exchange Act claims against the Individual Defendants must be dismissed.

## III. PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY UNDER § 20(A).

Because Plaintiffs have failed to plead a primary violation of securities laws under § 10(b), their § 20(a) claims also fail. *See ATSI*, 493 F.3d at 108. Nonetheless, even if Plaintiffs sufficiently pleaded a primary violation under § 10(b) (which they have not), their § 20(a) claims would still fail.

To state a claim for control person liability under § 20(a), a plaintiff must allege that (1) there was a primary violation of federal securities laws, (2) the defendant exercised actual power or control over the primary violator, and (3) the defendant meaningfully and culpably participated in the primary violator's fraud. *Id.* To show actual control, a plaintiff must

plausibly allege that a defendant has "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *McIntire* v. *China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122 (S.D.N.Y. 2013) (quoting 17 C.F.R. § 240.12b-2). The "culpable participation" element of § 20(a) is subject to a heightened pleading requirement and "is similar to the scienter requirement of Section 10(b)." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 661 (S.D.N.Y. 2007). To show culpable participation, a plaintiff—similar to the scienter requirement for a § 10(b) violation—must "plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *Id.* (citation omitted); *see In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254 (S.D.N.Y. 2018) (to show that a defendant culpably participated in the alleged fraud, a plaintiff must plead "particularized facts of the controlling person's conscious misbehavior or recklessness").

Here, Plaintiffs make no specific factual allegations that the Individual Defendants exercised any actual control over the alleged primary violators or culpably participated in any fraud, as required to plead control person liability under § 20(a). *See ATSI*, 493 F.3d at 108. Rather, Plaintiffs generally allege that the Individual Defendants were members of Volkswagen's Board throughout the putative Class Period (AC ¶¶ 16, 18, 19), and that "[e]ach of the Individual Defendants . . . directly participated in the management of" and "was directly involved in the day-to-day operations of" Volkswagen "at the highest levels" (*id.* ¶ 21(a)-(b)). These conclusory allegations are plainly insufficient. The Individual Defendants cannot be held liable as control persons for any alleged primary violation solely because of their positions on Volkswagen's Board. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F.

Supp. 2d 244, 262 (S.D.N.Y. 2005) (citation and internal quotation marks omitted) ("A person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20.").  Nor do Plaintiffs' general and collective allegations amount to anything more than the respective positions of the Individual Defendants on Volkswagen's Board—allegations that are insufficient to plead control person liability. [12]

Plaintiffs also generally allege that "[e]ach of the Individual Defendants . . . was privy to confidential proprietary information concerning [Volkswagen] and its business and operations." (AC ¶ 21(c).)  Again, these allegations are conclusory and collective, and Plaintiffs do not specify to which "confidential propriety information" the Individual Defendants may have been privy, when or how they became privy to that information, or whether they were aware of the same information.  Furthermore, Plaintiffs do not allege facts showing that the Individual Defendants knew about any information contrary to the Challenged Statements in the Annual Reports.  If Plaintiffs are contending that the Individual Defendants "had access to contrary facts," they are required to "specifically identify the reports or statements containing this information." *Levy* v. *Maggiore*, 48 F. Supp. 3d 428, 455 (E.D.N.Y. 2014) (quoting *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008)).

Furthermore, Plaintiffs generally allege that "[e]ach of the Individual Defendants . . . was directly or indirectly involved in drafting, producing, reviewing and/or

---

[12] Plaintiffs also allege that Volkswagen's "Board of Management" signed the Annual Reports. (AC ¶¶ 54, 75, 94, 113, 128.)  But Plaintiffs do not allege that any of the Individual Defendants had actual control over the content of the Annual Reports or the persons who drafted them, individually signed the Annual Reports, or participated in the Board's decision to sign the Annual Reports.  *Cf. Gruber* v. *Gilberston*, 2018 WL 1418188, at *15 (S.D.N.Y. Mar. 20, 2018) (stating that allegations that an officer or director signed a report are sufficient to plead control over persons who drafted the report).

disseminating" the statements Plaintiffs allege are false and misleading, that the Individual Defendants "w[ere] directly or indirectly involved in the oversight or implementation of [Volkswagen's] internal controls," and that "[e]ach of the Individual Defendants . . . was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning" Volkswagen.  (AC ¶ 21(d)-(f).)  These general and collective allegations do not show that any of the Individual Defendants had actual control over the drafting or publication of the Challenged Statements, nor do they provide any specific facts concerning what the Individual Defendants knew or should have known.  They are simply conclusory recitations—well below the threshold of establishing culpable participation in any fraud, as required for a § 20(a) claim. *See ATSI*, 493 F.3d at 108.[13]

Even if Plaintiffs' general, collective, and conclusory allegations are somehow enough to establish control person liability (which they are not), the Individual Defendants cannot be held liable for any Challenged Statements made when they were not on Volkswagen's Board because Plaintiffs do not allege that they were otherwise involved in making any of the Challenged Statements in the Annual Reports.  Specifically, Plaintiffs cannot establish control person liability for Mr. Müller or Mr. Witter for any Challenged Statements made in the 2012 through 2014 Annual Reports because Plaintiffs allege that the 2014 Annual Report was published in March 2015, but also allege that Mr. Müller was Volkswagen's Chairman of the

---

[13] Moreover, Plaintiffs' assertion that "[e]ach of the Individual Defendants . . . approved or ratified" the Challenged Statements "in violation of the federal securities law" (AC ¶ 21(g)) is a legal conclusion not entitled to the presumption of truthfulness and provides no particular facts concerning what, if any, control the Individual Defendants had over the making of the Challenged Statements or what, if anything, they knew or should have known concerning the veracity of the Challenged Statements.

Board only since September 2015, and further that Mr. Witter has been a Member of Volkswagen's Board for Finance and Controlling only since October 2015.  (AC ¶¶ 16, 18, 94.) Nor can Plaintiffs establish control person liability over Mr. Pötsch for any Challenged Statements made in the 2015 or 2016 Annual Reports because Plaintiffs allege that the 2015 Annual Report was published in April 2016 but that Mr. Pötsch was a Member of Volkswagen's Board for Finance and Controlling only until October 2015.  (*Id.* ¶¶ 19, 113).  Accordingly, this Court should dismiss Plaintiffs' § 20(a) control person liability claims against each of the Individual Defendants.

## CONCLUSION

Plaintiffs' Amended Complaint fails to adequately allege that this Court has personal jurisdiction over the Individual Defendants, that the Individual Defendants made the Challenged Statements with the requisite state of mind, that any of the Challenged Statements are actionable statements of material fact, or that the Individual Defendants are liable under § 20(a).  For these reasons, the Individual Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.


Dated:  September 11, 2018                       Respectfully submitted,

                                                */s/ Robert J. Giuffra, Jr.*
                                                Robert J. Giuffra, Jr.
                                                Suhana S. Han
                                                Justin J. DeCamp
                                                SULLIVAN & CROMWELL LLP
                                                125 Broad Street
                                                New York, New York  10004-2498
                                                Telephone:     (212) 558-4000
                                                Facsimile:     (212) 558-3588

                                                *Counsel for Volkswagen AG, Matthias Müller,*
                                                *Frank Witter, and Hans Dieter Pötsch*